1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SUE A. DEMELE,

                    Plaintiff,

        v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

                    Defendant.

CASE NO. C05-5171KLS

ORDER AFFIRMING THE
COMMISSIONER'S DECISION
TO DENY BENEFITS

Plaintiff, Sue A. Demele, has brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits.  The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13.  After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is forty-three years old.[1] Tr. 26.  She has a high school education and past work experience as a home health aide and survey worker. Tr. 16, 64, 69, 72.

Plaintiff filed an application for SSI benefits on January 15, 2002, alleging disability as of July 10, 2001, due to fibromyalgia and a bulging disk in her back. Tr. 15, 26, 55, 63.  Her application was denied

_____

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER
Page - 1

initially and on reconsideration. Tr. 26-28, 37.  Plaintiff requested a hearing, which was held on June 17, 2004, before an administrative law judge ("ALJ"). Tr. 195.  At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 195-223.

On August 30, 2004, the ALJ issued a decision determining plaintiff to be not disabled, finding specifically in relevant part as follows:

(1)   at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2)   at step two, plaintiff had "severe" impairments consisting of fibromyalgia, chronic fatigue syndrome, irritable bowel syndrome, and major depression;

(3)   at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)   at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which precluded her from performing her past relevant work; and

(5)   at step five, plaintiff was capable of performing other work existing in significant numbers in the national economy.

Tr. 24-25.  Plaintiff's request for review was denied by the Appeals Council on January 11, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 6; 20 C.F.R. § 416.1481.

On March 10, 2005, plaintiff filed a complaint in this court seeking judicial review of the ALJ's decision. (Dkt. #1).  Plaintiff argues that decision should be reversed and remanded for an award of benefits because the ALJ's assessment of her residual functional capacity and the hypothetical question the ALJ posed to the vocational expert are not supported by substantial evidence.  For the reasons set forth below, however, the undersigned finds the ALJ properly determined plaintiff not disabled.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

1   one rational interpretation, the court must uphold the Commissioner's decision.  <u>Allen v. Heckler</u>, 749 F.2d

2   577, 579 (9th Cir. 1984).

3   I.      <u>The ALJ Properly Assessed Plaintiff's Residual Functional Capacity</u>

4           If a disability determination "cannot be made on the basis of medical factors alone at step three of

5   the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

6   assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A

7   claimant's residual functional capacity assessment is used at step four to determine whether he or she can do

8   his or her past relevant work, and at step five to determine whether he or she can do other work. <u>Id.</u>

9   Residual functional capacity thus is what the claimant "can still do despite his or her limitations." <u>Id.</u>

10          A claimant's residual functional capacity is the maximum amount of work the claimant is able to

11  perform based on all of the relevant evidence in the record. <u>Id.</u>  However, a claimant's inability to work

12  must result from his or her "physical or mental impairment(s)." <u>Id.</u>  Thus, the ALJ must consider only those

13  limitations and restrictions "attributable to medically determinable impairments." <u>Id.</u>  In assessing a

14  claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-

15  related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

16  medical or other evidence." <u>Id.</u> at *7.

17          Here, the ALJ found plaintiff had the following residual functional capacity:

18          [T]he claimant retains the residual functional capacity to perform light work or work
            which requires lifting and carrying 20 pounds occasionally and ten pounds frequently,
19          sitting for six hours in an eight-hour workday and standing and/or walking six hours in
            an eight-hour workday.
20
            The claimant's capacity for the full range of light work is reduced by additional
21          limitations related to her mental impairments in that she has mild restrictions of activities
            of daily living and moderate difficulties in maintaining social functioning. . . . the
22          claimant has moderate difficulties in maintaining concentration, persistence and pace as
            she has difficulty concentrating on detailed tasks (Exhibits B6F [psychiatric report of Dr.
23          William Kelly], B11F [psychological evaluation of Brad Bates, Ph.D.]).  The claimant
            has had no episodes of decompensation of extended duration.  Based on these
24          limitations, . . . the claimant is able to perform simple repetitive tasks with limited
            interaction with the public.
25
26  Tr. 21.  Plaintiff argues that in so finding, the ALJ (1) improperly rejected the opinion of Dr. Bates that she

27  was markedly impaired in her concentration, persistence and pace, and (2) failed to reference the memory

28  testing score contained in Dr. Bates' report.  The undersigned, however, finds no error here.

            The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

1   medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the

2   record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the

3   ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, therefore, "the ALJ's

4   conclusion must be upheld." <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595,

5   601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in

6   fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical

7   experts "falls within this responsibility." <u>Id.</u> at 603.

8        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be

9   supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this "by setting out a

10  detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

11  thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the evidence."

12  <u>Sample</u>, 694 F.2d at 642.  Further, the court itself may draw "specific and legitimate inferences from the

13  ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

14       The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

15  either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

16  treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

17  legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the

18  ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739

19  F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain

20  why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07

21  (3d Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

22       In general, more weight is given to a treating physician's opinion than to the opinions of those who

23  do not treat the claimant. <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

24  a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or

25  "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190,

26  1195 (9th Cir.,2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242

27  F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the

28  opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A nonexamining physician's opinion may

1  constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-

2  31; <u>Tonapetyan</u>, 242 F.3d at 1149.

3       Dr. Bates evaluated plaintiff in late April 2004, finding her to be well groomed and casually dressed,

4  with good eye contact. Tr. 177.  Plaintiff exhibited "a normal level of activity without signs of psychomotor

5  agitation or retardation." <u>Id.</u>  She was polite and cooperative, with only a "moderate level of anxiety." <u>Id.</u>

6  Her affect was "mildly labile," and, although she reported having suicidal ideation, there was no intent or

7  plan. <u>Id.</u>  Plaintiff did describe "some remaining symptoms" of post traumatic stress disorder ("PTSD"), but

8  there were no signs of psychosis. <u>Id.</u>

9       While plaintiff "occasionally misused a word," her speech otherwise was "clear and coherent," she

10  was oriented, and her thinking was "logical and sequential." Tr. 178.  Psychological testing indicated that

11  plaintiff's immediate memory was "extremely poor." <u>Id.</u>  Her remote memory, on the other hand, appeared

12  to be "adequate." <u>Id.</u>  Plaintiff also performed "extremely poorly" with respect to concentration, although

13  she "did not appear to have difficulty following the conversation during the interview." <u>Id.</u>  Her insight was

14  "moderate," but her judgment seemed to be "roughly within normal limits." <u>Id.</u>

15       More specifically with respect to plaintiff's concentration, persistence and pace, as noted above, Dr.

16  Bates found her attention and concentration appeared to be "extremely poor" based on both psychological

17  testing and her performance during the mental status examination. Tr. 179.  Plaintiff's "physical and

18  emotional stamina and endurance" also appeared to be "extremely poor." <u>Id.</u>  Further, she seemed to have

19  "significant impairment with regard to pace." <u>Id.</u>  Dr. Bates thought that psychological testing showed

20  plaintiff to have "relatively slow cognitive processing" as well, and felt that her "chronic pain" was

21  interfering "with rapidly completing activities of daily living." <u>Id.</u>  In all, he found plaintiff to have

22  "significant impairments with regard to concentration, persistence, and pace." <u>Id.</u>

23       Dr. Bates diagnosed plaintiff as having moderate, recurrent major depression, PTSD, borderline

24  intellectual functioning, and a current global assessment of functioning ("GAF") of 50 (the highest in the

25  past year being 55). Tr. 180-81.  In terms of prognosis, Dr. Bates stated as follows:

26       Prognosis for Ms. Demele's Depression and Post-Traumatic Stress Disorder is fairly
         poor.  Both are long-standing psychological conditions and have persisted despite two
27       previous episodes of long-term outpatient psychological counseling coupled with
         appropriate psychotropic medication.  Prognosis for the diagnosis of Borderline
28       Intellectual Functioning is extremely poor as this condition does not change over time.

1  Tr. 181.

2        The record also contains a psychiatric evaluation performed by Dr. William Kelly in mid-July 2002.

3  Dr. Kelly found plaintiff to be neat and clean, "very polite," and cooperative, with "no peculiar mannerisms

4  or motor behavior." Tr. 130.  Her speech was "within normal limits," her thought processes were generally

5  linear, albeit "somewhat slowed," and her thought content was negative for suicidal or homicidal ideation,

6  hallucinations, and delusions. Id.  Plaintiff exhibited some problems with memory, but she was oriented and

7  able to execute a three-step command. Id.  Dr. Kelly diagnosed her with a depressive disorder and an

8  anxiety disorder, with a GAF score of 55. Tr. 131.  He ruled out borderline intellectual functioning. Id.  In

9  terms of plaintiff's functioning and prognosis, Dr. Kelly opined as follows:

10        It appears she is able to do all her housework and cooking and take care of her family.
          She claimed to be depressed because of fibromyalgia, but her affect would not support
11        the severity of depression that she claims.  It would seem that she should be able to at
          least perform simple and repetitive tasks, accept instructions from supervisors, and
12        perform work activities on a consistent basis, a[s] well as maintain regular attendance in
          the workplace.

13  Id.

14        Thomas Clifford, Ph.D., a non-examining consulting physician, completed both a mental residual

15  functional capacity assessment form and a psychiatric review technique form in late August 2002.  On the

16  mental residual functional capacity assessment form, Dr. Clifford diagnosed plaintiff with a depressive

17  syndrome and an anxiety disorder. Tr. 164, 166.  He indicated that she had mild restrictions in her activities

18  of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace,

19  and no repeated episodes of decompensation. Tr. 171.  On the psychiatric review technique form, Dr.

20  Clifford indicated plaintiff was markedly limited in her ability to understand, remember and carry out

21  detailed instructions and interact appropriately with the general public. Tr. 151-52.  He also found plaintiff

22  to be moderately limited in her ability to maintain attention and concentration. Tr. 151.

23        With respect to plaintiff's argument that the ALJ improperly rejected Dr. Bate's opinion regarding

24  his limitation concerning concentration, persistence and pace, the undersigned finds that the substantial

25  evidence in the record supports the ALJ's finding of only a moderate limitation here.  The record contains

26  one opinion from an examining psychologist, Dr. Bates, and another from an examining psychiatrist, Dr.

27  Kelly.  Where the opinion of an examining physician is based on independent clinical findings, it is within the

28  ALJ's discretion to disregard the conflicting opinion in another examining physician's diagnosis. See Saelee

1    v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  This is what the ALJ did here.

2        The ALJ summarized the findings of both Dr. Bates and Dr. Kelly in his decision, but determined

3    that those of Dr. Kelly with respect to plaintiff's concentration, persistence and pace were more accurate.

4    Tr. 18-19, 21.  The ALJ's assessment of plaintiff mental residual functional capacity essentially comports

5    with the limitations found by Dr. Kelly.  Those limitations and that assessment are further supported by the

6    reports and opinions provided by Dr. Clifford.   While a non-examining physician's opinions alone may not

7    constitute substantial evidence, they do if they are "consistent with other independent evidence in the

8    record," as they are here. Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149.

9        The same can be said with respect to plaintiff's memory.  Although Dr. Kelly noted some problems

10   with memory during the mental status examination, he did not find she had any functional limitation in that

11   area, other than a limitation to simple, repetitive tasks. Tr. 130-31.  Again, the opinions of Dr. Clifford are

12   in agreement with that of Dr. Kelly in this regard. Tr. 151-53, 171.  Thus, while Dr. Bates found plaintiff's

13   memory to be "extremely poor" (Tr. 178-79), both Dr. Kelly and Dr. Clifford noted far less serious issues in

14   this area (Tr. 130-31, 151-53, 171).  As such, the substantial medical evidence in the record supports the

15   ALJ's determination here as well.  Accordingly, the ALJ did not err in adopting the findings of Drs. Kelly

16   and Clifford regarding plaintiff's memory rather than those of Dr. Bates.

17       Plaintiff asserts the ALJ erred in failing to mention the specific memory testing results obtained by

18   Dr. Bates.  However, the ALJ need not discuss every piece of evidence before him. Vincent, 739 F.3d at

19   1394-95.  In any event, the ALJ may draw inferences "logically flowing from the evidence," and the court

20   itself may draw "specific and legitimate inferences from the ALJ's opinion" as well. Sample, 694 F.2d at

21   642; Magallanes, 881 F.2d at 755.  Here, it may be inferred that the ALJ considered the memory testing

22   score obtained by Dr. Bates along with the other findings in his evaluation, but decided to reject that score

23   in favor of the less severe limitations found by Dr. Kelly and Dr. Clifford.  Accordingly, the undersigned

24   finds the ALJ also did not err in failing to specifically reference this score in his decision.

25   II.    The ALJ Did Not Err in Finding Plaintiff Capable of Performing Other Jobs Existing in Significant
             Numbers in the National Economy

26

27       An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

28   posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

     1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

1   medical evidence to qualify as substantial evidence. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988).

2   Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by

3   the medical record." <u>Embrey</u>, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that

4   description those limitations he finds do not exist. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001)

5   (because ALJ included all limitations that he found to exist, and those findings were supported by

6   substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

7           At the hearing, the ALJ posed a hypothetical question to the vocational expert, which contained

8   substantially the same limitations as in the ALJ's assessment of plaintiff's residual functional capacity. Tr.

9   219.  In response to the ALJ's hypothetical question, the vocational expert testified that while an individual

10  with that residual functional capacity could not perform plaintiff's past relevant work, he or she would be

11  able to perform other jobs. Tr. 219-21.  Based on the testimony of the vocational expert, the ALJ found that

12  these jobs existed in significant numbers in the national economy, and that plaintiff thus was not disabled at

13  step five of the disability evaluation process. Tr. 22-23.

14          Plaintiff argues that because the ALJ did not give valid reasons for rejecting Dr. Bates' opinion and

15  thus erred in assessing her residual functional capacity, the hypothetical question that the ALJ posed to the

16  vocational expert was unreliable.  However, as discussed above, the ALJ did not err in evaluating and then

17  rejecting the opinion of Dr. Bates or in assessing plaintiff's residual functional capacity.  The argument that

18  the ALJ posed an improper hypothetical, therefore, is without merit as well.  Accordingly, the undersigned

19  finds the ALJ also did not err in finding plaintiff capable of performing other jobs existing in significant

20  numbers in the national economy.

21                                          <u>CONCLUSION</u>

22          Based on the foregoing discussion, the court finds the ALJ properly determined plaintiff was not

23  disabled.  Accordingly, the ALJ's decision is affirmed.

24          DATED this 5th day of December, 2005.

25

26

27                                          Karen L. Strombom
                                            United States Magistrate Judge
28